**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-23978-GAYLES/OTAZO-REYES**

ERRIC S. MYRICKS,

      *Pro se* Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

_____ /

## REPORT AND RECOMMENDATION

      THIS CAUSE came before the Court upon *pro se* Plaintiff Erric S. Myricks' ("Plaintiff" or "Claimant") Motion for Summary Judgment (hereafter, "Claimant's Motion for Summary Judgment") [D.E. 14] and Defendant Andrew Saul, Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment (hereafter, "Commissioner's Motion for Summary Judgment") [D.E. 16]. The administrative transcript (hereafter, "TR.") has been filed [D.E. 13].[1]  For the reasons stated below, the undersigned respectfully recommends that Claimant's Motion for Summary Judgment be DENIED, the Commissioner's Motion for Summary Judgment be GRANTED, and the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

      In August 2016, Claimant filed applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of May 16, 2016.  TR. 299–313.  The applications were denied initially and upon reconsideration.  Id. at 90–119, 124–55.  Pursuant to a written request, a hearing was held on

---

[1] The references hereafter (TR. __) are to the transcript pages rather than the court record pages.

August 8, 2018 before Administrative Law Judge Rebecca Wolfe ("ALJ Wolfe") at which

Claimant and Vocational Expert Heidi Caplan Feder ("VE Feder") testified.  Id. at 36–87.  On

December 6, 2018, ALJ Wolfe issued an Unfavorable Decision, finding that:

(1) Claimant met the insured status requirements of the Social Security Act through December 31, 2019.  Id. at 21.

(2) Claimant had not engaged in substantial gainful activity since May 16, 2016, the alleged onset date (20 C.F.R. §§ 404.1571 et seq. and 416.971 et seq.).  Id.

(3) Claimant had the following severe impairments: degenerative disc disease, neuropathy, hypertension, and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).  Id.

(4) Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  Id. at 22.[2]

(5) Claimant had the residual functional capacity ("RFC") to perform sedentary work subject to additional limitations.  Id. at 22–23.[3]

(6) Claimant was unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).  Id. at 26.[4]

(7) Claimant was born on September 8, 1969 and was 46 years old, which was defined as a younger individual age 45–49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).  Id. at 27.

---

[2] The Social Security Administration's ("SSA") Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a) and 416.925(a).

[3] The RFC is the ability of a claimant to do physical and mental work activities on a sustained basis, despite the claimant's limitations or impairments.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).  The RFC must be determined based on all of the claimant's impairments, even those that are not considered "severe."  See 20 C.F.R. §§ 404.1520, 404.1545, 416.920, and 416.945.
"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a) and 416.967(a).

[4] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1).

(8) Claimant had at least a high school education and was able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).  Id.

(9) Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Claimant was "not disabled," whether or not Claimant had transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  Id.[5]

(10) Considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969 and 416.969a).  Id.

(11) Claimant had not been under a disability, as defined in the Social Security Act, from May 16, 2016, through the date of the Unfavorable Decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).  Id. at 28.

On July 27, 2019, the Appeals Council denied a request for review of ALJ Wolfe's Unfavorable Decision.  Id. at 1–6.  On September 25, 2019, pursuant to 42 U.S.C. § 405(g), Claimant filed this action seeking reversal of ALJ Wolfe's final administrative decision [D.E. 1].

In support of his contention that ALJ Wolfe's Unfavorable Decision should be reversed, Claimant argues that:

I.      The ALJ committed reversible error by improperly considering the medical opinion testimony.

II.     The ALJ committed reversible error by discrediting Claimant.

III.    The ALJ committed reversible error by failing to consider Claimant's mental impairments and obesity as medically determinable severe impairments.

See Claimant's Motion for Summary Judgment [D.E. 14 at 3–7].

---

[5] SSRs are a series of precedential decisions relating to the programs administered by the SSA and are published under the authority of the Commissioner of Social Security.  See http://ssa.gov/regulations/def-ssr.htm.

<u>**RELEVANT MEDICAL EVIDENCE**</u>

**I.     Treating Sources**

    **A.   Anne Bates Leach Eye Hospital – Bascom Palmer Eye Institute ("Bascom Palmer")**

On February 7, 2014, Claimant visited Bascom Palmer complaining of decreased vision. TR. 443.  It was noted that Claimant's visual acuity without correction was 20/200 in both eyes and his best corrected visual acuity was 20/20 in both eyes.  <u>Id.</u> at 443–44.

    **B.   America's Best**

On March 21, 2016, it was noted that Claimant's best corrected visual acuity was 20/20 in both eyes.  <u>Id.</u> at 532.

    **C.   South Georgia Medical Center ("SGMC")**

On December 5, 2015, Claimant presented to SGMC's emergency room complaining of back pain.  <u>Id.</u> at 503.  On physical examination, it was noted that Claimant displayed a full range of motion in all extremities with no tenderness.  <u>Id.</u> at 506.  It was also noted that: Claimant had a body mass index of 36.6; he had no muscular weakness; his gait/ambulation was normal; and he walked without difficulty.  <u>Id.</u> at 504.  Imaging studies of Claimant's cervical spine revealed degenerative narrowing of the disc spaces but no evidence of acute cervical fracture; and imaging studies of Claimant's lumbar spine revealed no evidence of acute fracture, normal alignment and position of the lumbar vertebrae, no sign of disc herniation or spinal stenosis, and no evidence of significant foraminal compromise.  <u>Id.</u> at 507.

    **D.   Camillus Health Concern, Inc. ("Camillus Health")**

On September 27, 2016, Claimant was seen by Jim Torres, M.D. ("Dr. Torres") at Camillus Health.  <u>Id.</u> at 582.  Claimant reported: chronic back pain; no neurological symptoms; no feelings of hopelessness, feeling down, or depressed; and no difficulty with activities of daily living.  <u>Id.</u> at

4

582–84.  Dr. Torres assessed Claimant as suffering from visual impairment in both eyes, hypertension, cervical spondylosis with myelopathy, and peripheral neuropathy, and showing no significant symptoms of depression.  Id. at 584-85.  Dr. Torres prescribed for Claimant an angiotensin converting enzyme inhibitor, a narcotic, and a muscle relaxant.  Id. at 585.  Dr. Torres also recommended that Claimant exercise regularly, lose weight, and maintain a healthy diet.  Id. at 586.

### E.  Jackson Health System ("JHS") and associated medical facilities

On September 23, 2016, Claimant underwent magnetic resonance imagining ("MRI") of his cervical spine, which revealed: a bulging disc and left lateral protrusion at C3-C4; a bulging disc at C4-C5; and bilateral multilevel foraminal stenosis.  Id. at 575.

On September 2, 2016, Claimant complained of worsening pain and numbness radiating down his right arm/hand.  Id. at 540.  Claimant also reported that he had not been taking medication for his hypertension for many months.  Id. at 541.  Claimant was instructed to undergo an MRI of his cervical spine, prescribed a nonsteroidal anti-inflammatory drug, nerve pain medication, and a calcium channel blocker, and told to return in two months.  Id. at 541–42.

On December 19, 2016, Claimant returned for his scheduled follow-up visit.  Id. at 651. On physical examination, it was noted that: in his right upper extremity, Claimant had 4/5 strength in his proximal muscles and 3/5 strength distally; there was decreased sensation of fine touch over his lateral hand and the lateral aspect of his arm; he had significant atrophy over his right shoulder muscles; and he had 5/5 strength in his left side.  Id. at 652.  Claimant was referred to a neurosurgeon.  Id. at 652–53.

On January 4, 2017, Claimant presented to the emergency room complaining of neck pain. Id. at 655.  On physical examination, it was noted that: Claimant had normal range of motion; he

had 4/5 strength in his left upper extremity; and he had diminished sensation in his left lower extremity. Id. at 656. Claimant was given a narcotic for his pain and an antiemetic. Id. Claimant also underwent: an MRI of his cervical spine, which revealed multilevel degenerative changes with mild spinal canal stenosis and severe neural foraminal narrowing; and an MRI of his lumbar spine, which revealed mild lumbar spondylosis. Id. at 661–62.

On February 21, 2017, Claimant presented to the emergency room complaining of neck pain. Id. at 726. Claimant reported that the medications given to him during his prior visit had been helpful. Id. On physical examination, it was noted that: Claimant had normal strength and no swelling; he had no neurological deficits or weakness; and he had normal motor function. Id. at 727–28.

On March 6, 2017, Claimant underwent imaging studies of his cervical spine, which revealed: degenerative changes; evidence of nonunion at C6-C7; and a slightly displaced screw at C7 from a prior anterior cervical discectomy and fusion at C5-C7. Id. at 733–34.

Pursuant to Dr. Torres' referral for his cervical spondylosis with myelopathy diagnosis, Claimant underwent physical therapy from March 8, 2017 to April 5, 2017. Id. at 735–66. At Claimant's final physical therapy session on April 5, 2017, it was noted that Claimant was able to perform all requested therapeutic exercises with good technique and that he had at least 75% range of motion through mobility. Id. at 764–65. Claimant reported that his pain at that time was a 4.5, that physical therapy had helped him, and that he hoped additional physical therapy would be prescribed. Id. at 765.

On April 4, 2017, Claimant attended a follow-up visit for his neck pain. Id. at 772. Claimant reported that the narcotic he had been previously given had alleviated his pain and that his physical therapy sessions had improved his mobility. Id. at 772–73. On physical examination,

it was noted that: Claimant had no edema in his left extremity; as to his right upper extremity, Claimant had 4/5 strength in his proximal muscles and 3/5 strength distally; there was decreased sensation of fine touch over his lateral hand and the lateral aspect of his arm; he had significant atrophy over his right shoulder muscles; and he had 5/5 strength in his left side.  Id. at 773.  It was also noted that Claimant had been seen by a neurosurgeon who found that no surgical intervention was necessary.  Id.  Claimant was prescribed a narcotic and instructed to continue physical therapy. Id.

On June 12, 2017, Claimant was seen for pain management upon referral from the neurosurgical team.  Id. at 775.  On physical examination, it was noted that: Claimant had 5/5 strength in his bilateral upper and lower extremities; his sensation was intact to light touch; and he had a normal range of motion in his extremities.  Id. at 776.

On October 10, 2017, Claimant underwent a nerve conduction study, which revealed right median nerve moderate axon loss as well as right ulnar nerve mild axon loss.  Id. at 877.

Plaintiff was hospitalized from January 13, 2018 through February 1, 2018 after being struck by an all-terrain vehicle ("ATV"), which resulted in left arm pain and a fractured left humerus and left tibial plateau.  Id. at 858, 860.  On January 24, 2018 and January 30, 2018, Claimant underwent open reduction and internal fixation procedures to repair these fractures.  Id. at 880–81.

On January 25, 2018, Claimant underwent a behavioral health consultation.  Id. at 926.  On mental status examination, it was noted that: Claimant was oriented to person, place, purpose, and time; his appearance was appropriate; he was cooperative, pleasant, engaged, and friendly; his eye contact was appropriate; he denied perceptual disturbances/psychosis; his content of thought was relevant to the questions asked by the clinician; his thought process was linear, logical, coherent,

and goal-directed; his quality of speech was normal; and his insight/judgment was good/fair.  Id. at 927.

On January 29, 2018, Claimant underwent a second behavioral health consultation.  Id. at 933.  On mental status examination, it was noted that: Claimant was oriented to person, place, purpose, and time; his appearance was appropriate; he was cooperative, pleasant, engaged, and friendly; his eye contact was appropriate; he denied perceptual disturbances/psychosis; his content of thought was relevant to the questions asked by the clinician; his thought process was linear, logical, coherent, and goal-directed; his quality of speech was normal; and his insight/judgment was good/fair.  Id. at 933–34.

On March 22, 2018, during a post-op visit related to Claimant's ATV injuries, Claimant was instructed to continue weightbearing on his left upper extremity as tolerated, discontinue use of a hinged knee brace, and attend physical therapy for his left upper extremity to work on range of motion, strengthening, and stretching.  Id. at 881.

On April 23, 2018, Claimant presented at a JHS clinic complaining of pain related to the ATV accident and subsequent surgical procedures.  Id. at 814.  On physical examination, it was noted that: Claimant moved all limbs spontaneously but complained of pain on palpation of his left upper and lower extremities; his passive and active range of motion was limited by pain; and his neurological examination was unremarkable.  Id. at 815.

On May 3, 2018, Claimant presented to the emergency room complaining of left shoulder and back pain.  Id. at 832.  On physical examination it was noted that Claimant did not display any neurological deficits.  Id. at 834.

On May 28, 2018, Claimant presented to the emergency room complaining of headaches and neck pain.  Id. at 840.  Claimant was examined by Thomas Knight, M.D. ("Dr. Knight") during

8

that visit.  Id.  On physical examination, Dr. Knight noted that: Claimant had no musculoskeletal deformity or swelling; his neurological exam revealed normal sensory and motor findings; and he had a limp favoring his left lower extremity.  Id. at 841.  A toxicology screen during that visit revealed the presence of cocaine, cannabinoids, and opioids in Claimant's system.  Id. at 818, 852.  Based on the results of the toxicology screen, Dr. Knight diagnosed Claimant with polysubstance abuse and drug seeking behavior.  Id. at 841–42.  In an addendum entered on September 28, 2018, Dr. Knight rescinded his diagnosis of drug seeking behavior after Claimant explained that the cocaine in his system could be attributed to ingesting marijuana unknowingly laced with cocaine and that the opioids in his system could be attributed to previous pain medications prescribed to him.  Id. at 841.  However, Dr. Knight did note that he believed the results of the toxicology screen were correct.  Id.

On July 19, 2018, Claimant had a follow-up visit for his surgical procedures related to the ATV accident.  Id. at 805.  On physical examination, it was noted that Claimant had no gross deformity and a full range of motion in his left upper extremity, and that he had no gross deformity and improved range of motion in his left lower extremity with intact sensation to light touch.  Id.  Imaging studies also revealed appropriate interval healing and well-placed hardware.  Id.

## II.    Non-Treating Sources

### A.    State Agency Medical Consultant Fredrick Lutz, M.D. ("Dr. Lutz")

On January 12, 2017, Dr. Lutz completed a Physical RFC Assessment of Claimant.  Id. at 133–37, 150–54.  Dr. Lutz opined that Claimant had the following exertional, postural, and environmental limitations:

➢ He could frequently lift and/or carry less than 10 pounds.

➢ He could occasionally: lift and/or carry 10 pounds; climb ramps/stairs; stoop; kneel; crouch; and crawl.

➢ He was able to stand and/or walk for a total of 2 hours in an 8-hour workday.

➢ He was able to sit, with normal breaks, for a total of more than 6 hours on a sustained basis in an 8-hour workday.

➢ He could never climb ladders/ropes/scaffolds.

➢ He should avoid even moderate exposure to hazards (machinery, heights, etc.).

Id. at 134–35, 150–51.  Dr. Lutz opined that Claimant had the physical RFC to perform sedentary work.  Id. at 137, 153.

## HEARING TESTIMONY

A hearing was held on August 8, 2018 before ALJ Wolfe, at which Claimant and VE Feder testified.  Id. at 36–87.

### I.    Claimant

Claimant testified that he had 30 years of experience working in construction and that from 2007–2014 his work focused on home renovations.  Id. at 49–50.  Claimant explained that his work required him to lift items that weighed in excess of 50 lbs. and to be on his feet most of the workday.  Id. at 51.

Claimant testified that he last worked in 2014 and had not been able to work since then due to back pain and numbness in his extremities.  Id. at 49, 56–57.  Claimant also testified that in January 2018 he was struck by an ATV, which resulted in injuries to his left humerus and left knee and required multiple corrective surgeries.  Id. at 58–60.  Claimant explained that he was receiving medical treatment for his neuropathy, back pain, and ATV injuries and that he had been using a cane for two months prior to the hearing.  Id. at 57–58, 61.  Claimant also testified that he was smoking marijuana daily to alleviate his pain and was not taking any other pain medications.  Id. at 64.

Claimant testified that as a result of his pain and injuries: he could only sit for an hour and stand for 30 minutes before needing to change positions; he could only walk half a block in length; he was right hand dominant and could lift about 20 lbs. with his right arm but not his left arm; and the only household chore he occasionally performed was washing dishes. Id. 65–68, 70–71. Claimant also testified that he suffered from depression and that his pain caused him to be angry, which resulted in anti-social behavior.  Id. at 68–69, 71.

## II.     VE Feder

VE Feder classified Claimant's prior work as follows:

➤  House worker, DOT # 869.381-010,[6] with an exertional level of heavy[7] and a Specific
    Vocational Preparation ("SVP") of 7.[8]  Id. at 77–78.

➤  Mold maker, DOT # 777.684-014, with an exertional level of light[9]  and an SVP of 5.[10]
    Id. at 78.

ALJ Wolfe posed two hypotheticals to VE Feder regarding an individual of Claimant's

---

[6] DOT is the acronym for the Dictionary of Occupational Titles, which was created by the Employment and Training Administration and groups jobs based on their similarities, and defines the structure and content of all listed occupations.   See Dictionary of Occupational Titles app. c (4th ed., rev. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(d) and 416.967(d).

[8]  SVP is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   See Dictionary of Occupational Titles app. c (4th ed., rev. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.
An SVP of 7 means that preparation for the job should take "[o]ver 2 years up to and including 4 years."
Id.

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

[10] An SVP of 5 means that preparation for the job should take "[o]ver 6 months up to and including 1 year."
See   Dictionary   of   Occupational   Titles   app.   c   (4th   ed.,   rev.   1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

age, education, and work experience who could work at the sedentary exertional level with the

following limitations:

1. can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; can occasionally reach with his left, non-dominant, hand; can frequently handle objects, finger, or feel bilaterally; must avoid all exposure to hazardous machinery, moving mechanical parts, unprotected heights, extreme cold, extreme heat, and vibration; must never operate a motor vehicle; can have no more than occasional interaction with supervisors, coworkers, and the public; and can complete simple, routine, and repetitive tasks but not at a production rate or pace.

2. had the same limitations as the individual in Hypothetical No. 1, except this individual could frequently reach with his left, non-dominant, hand.

Id. at 78–85.

VE Feder testified that the individual in Hypothetical No. 1 would be unable to perform

Claimant's past relevant work, but would be able to perform the following representative job:

➢ Addresser, DOT # 209.587-010, with an exertional level of sedentary and an SVP of 2,[11] with approximately 8,400 jobs in the national economy.

Id. at 82–83.

VE Feder testified that the individual in Hypothetical No. 2 would be able to perform the

following representative jobs:

➢ Document preparer, DOT # 249.587-018, with an exertional level of sedentary and an SVP of 2, with approximately 40,000 jobs in the national economy; and

➢ Tube operator, DOT # 239.687-014, with an exertional level of sedentary and an SVP of 2, with approximately 10,500 jobs in the national economy.

Id. at 83.  VE Feder testified that the individuals in Hypotheticals Nos. 1 & 2 would still be able

to perform the aforementioned representative jobs even if they required a cane to be utilized for

---

[11] An SVP of 2 means that preparation for the job should take "[a]nything beyond short demonstration up to and including 1 month."  See Dictionary of Occupational Titles app. c (4th ed., rev. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

uneven terrain or prolonged ambulation.  Id. at 84.

## STANDARD OF REVIEW

A federal court's "review of a social security case is demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." Williams v. Astrue, 416 F. App'x 861, 862 (11th Cir. 2011).  Thus,

> [t]he Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Kieser v. Barnhart, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted).  However, the Commissioner's "conclusions of law, including applicable review standards, are not presumed valid."  Williams, 416 F. App'x at 862.

## REGULATORY FRAMEWORK:  THE FIVE-STEP SEQUENTIAL PROCESS

The Social Security Regulations outline a five-step "sequential" evaluation process used to determine whether a claimant is disabled.

First, the ALJ must determine whether a claimant is engaged in "substantial gainful activity" ("SGA").  If the ALJ finds that the claimant is engaging in SGA, then the ALJ must find that the claimant is not disabled.  Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  In this case, ALJ Wolfe determined that Claimant had not engaged in SGA since the onset date of May 16, 2016, and proceeded to step two.  TR. 21.

At the second step, the ALJ must determine if a claimant's impairments are "medically severe."  If the ALJ determines that the claimant's impairments are medically severe, then he or she must proceed to the third step.  Phillips, 357 F.3d at 1237.  In this case, ALJ Wolfe found that

Claimant suffered from the following severe impairments: degenerative disc disease, neuropathy, hypertension, and obesity.  TR. 21–22.  ALJ Wolfe then proceeded to step three.  Id. at 22.

At step three, the ALJ must determine if a claimant's impairment(s) "meet or equal" any of the listed impairments in the regulations.  Phillips, 357 F.3d at 1238.  If so, the ALJ must find the claimant disabled; if not, then the ALJ should proceed to step four.  Id.  Here, ALJ Wolfe determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  TR. 22.  Therefore, ALJ Wolfe proceeded to step four.  Id. at 22–26.

Step four is a two-pronged process, which first requires the determination of a claimant's RFC and then, based on that RFC, a determination of whether the claimant can return to any "past relevant work."  Phillips, 357 F.3d at 1238.  As to the first prong, ALJ Wolfe determined that Claimant had the RFC to:

> perform sedentary work as defined in 20 CFR 404.157(a) and 416.967(a) except he can never climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl.  He can frequently balance.  He can frequently handle objects, finger, or feel with both hands.  He can frequently reach above his shoulder with his left, non-dominant upper extremity.  He must avoid all exposure to hazardous machinery, moving mechanical parts, unprotected heights, extreme cold, extreme heat, and vibration.  He must also never operate a motor vehicle.  Lastly, he is limited to occupations that require no more than occasional interaction with supervisors, coworkers, and the public.

TR. 22–23.  ALJ Wolfe moved to prong two of step four and concluded that Claimant was unable to perform any past relevant work.  Id. at 26–27.  ALJ Wolfe then proceeded to the fifth and final step.  Id. at 26–28.

Step five requires the ALJ to determine whether the claimant is able to do any work considering the claimant's age, education, work experience, and RFC.  Phillips, 357 F.3d at 1239–40.  ALJ Wolfe determined that, given Claimant's age, education, work experience, and RFC,

there were jobs that existed in significant numbers in the national economy which Claimant could perform.  TR. 27–28.  Therefore, ALJ Wolfe concluded that Claimant was not under a disability, as defined in the Social Security Act, from May 16, 2016 through the date of ALJ Wolfe's Unfavorable Decision.  Id. at 28.

## DISCUSSION

As previously noted, Claimant argues that:

I.      The ALJ committed reversible error by improperly considering the medical opinion testimony.

II.     The ALJ committed reversible error by discrediting Claimant.

III.    The ALJ committed reversible error by failing to consider Claimant's mental impairments and obesity as medically determinable severe impairments.

See Claimant's Motion for Summary Judgment [D.E. 14 at 3–7].  The undersigned finds no merit in Claimant's arguments.

### I.      Whether the ALJ committed reversible error by improperly considering the medical opinion testimony.

Claimant argues that ALJ Wolfe erred by improperly weighing the medical opinions of: (a) Dr. Torres; (b) Dr. Knight; (c) Dr. Lutz; and (d) "Jesse Faxas, Ph.D."  See Claimant's Motion for Summary Judgment [D.E. 14 at 4–5].

"The ALJ must consider medical opinions together with relevant evidence in the record." Hand v. Soc. Sec. Admin., Comm'r, No. 18-14147, 2019 WL 4447206, at *3 (11th Cir. 2019) (citing 20 C.F.R. § 404.1527(b)).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  When weighing medical opinions, "the ALJ should consider the

following factors: the examining and treatment relationship between the claimant and doctor; the supportability and consistency of the opinion with the record as a whole; the specialization of the doctor; and other factors that tend to support or contradict the opinion." Hand, 2019 WL 4447206, at *3 (citing 20 C.F.R. § 404.1527(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).

"Generally, a treating source's opinion is given 'substantial or considerable weight unless good cause is shown to the contrary.'" Lara v. Comm'r of Soc. Sec., 705 F. App'x 804, 811 (11th Cir. 2017) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241 (citing Lewis, 125 F.3d at 1440). "If the ALJ gives less than controlling weight to a treating source's opinions, the ALJ must clearly articulate the reasons for doing so." Lara, 705 F. App'x at 811. "When the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012) (citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).

"On the other hand, a consulting physician's opinion 'deserves no special weight.'" Meade v. Astrue, No. 09-CV-02027, 2010 WL 5575303, at *4 (M.D. Fla. 2010) (citing Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007))

   a.   Dr. Torres

Claimant argues that ALJ Wolfe erred by according Dr. Torres' "medical notes and

classifications 'little weight[,]'" and that ALJ Wolfe found "'[t]hat while there are some objective findings consistent with [JHS'] and not Dr. Torres['] tentative diagnoses, those findings do not support the degree of functional limitation proffered.'" See Claimant's Motion for Summary Judgment [D.E. 14 at 4–5]. Initially, ALJ Wolfe's Unfavorable Decision does not include the finding attributed to the ALJ by Claimant.

Moreover, the only record of Claimant treating with Dr. Torres during the relevant time period was a visit on September 27, 2016, which stated that: Claimant reported chronic back pain but denied neurological symptoms, feelings of hopelessness, feeling down or depressed, and difficulty with activities of daily living; Dr. Torres assessed Claimant to have no significant symptoms of depression but to have suffered from visual impairment in both eyes, hypertension, cervical spondylosis with myelopathy, and peripheral neuropathy; Dr. Torres prescribed Claimant an angiotensin converting enzyme inhibitor, a narcotic, and a muscle relaxant; and Dr. Torres recommended that Claimant exercise regularly, lose weight, and maintain a healthy diet. Id. at 582–86.

Because the records from Claimant's September 27, 2016 visit with Dr. Torres did not address what activities Claimant could or could not perform, ALJ Wolfe did not and was not required to articulate any weight accorded to those records. See Romero v. Comm'r of Soc. Sec., 752 F. App'x 906, 908 (11th Cir. 2018) (medical records that mention physical complaints, medical history, the results of physical examinations and laboratory tests, and recommendations for and responses to treatment do not contain medical opinions because they do not reflect what activities the claimant can or cannot perform). Therefore, ALJ Wolfe did not commit reversible error with respect to Dr. Torres.

b.  Dr. Knight

Claimant argues that ALJ Wolfe erred by "[giving] too much weight to the medical opinion of Thomas Knight, who examined Plaintiff in May 2018, and diagnosed Plaintiff with poly-substance abuse and drug seeking behavior, only to have to issue the Plaintiff an addendum[,]" and by favoring Dr. Knight's medical opinion.  See Claimant's Motion for Summary Judgment [D.E. 14 at 5].  Initially, ALJ Wolfe's Unfavorable Decision does not support Claimant's argument that ALJ Wolfe favored Dr. Knight's purported medical opinion, given that ALJ Wolfe found that Claimant's substance abuse diagnosis was non-severe.  TR. 21.

Moreover, the record of Claimant's treatment with Dr. Knight in May 2018 reflects that: Claimant complained of headaches and neck pain; Dr. Knight noted that Claimant had no musculoskeletal deformity or swelling, his neurological exam revealed normal sensory and motor findings, and he had a limp favoring his left lower extremity; Claimant's toxicology screen was positive for cocaine, cannabinoids, and opioids; Dr. Knight diagnosed Claimant with polysubstance abuse and drug seeking behavior; and Dr. Knight rescinded his diagnosis of drug seeking behavior after receiving an explanation from Claimant.  Id. at 818, 840–42, 852.

Because the records from Claimant's May 2018 visit with Dr. Knight did not address what activities Claimant could or could not perform, ALJ Wolfe did not and was not required to articulate any weight accorded to those records.  See Romero, 752 F. App'x at 908. Therefore, ALJ Wolfe did not commit reversible error with respect to Dr. Knight.

c.  Dr. Lutz

Claimant argues that ALJ Wolfe erred by giving Dr. Lutz's medical opinion great weight. See Claimant's Motion for Summary Judgment [D.E. 14 at 5].  Claimant misstates the record as ALJ Wolfe only gave Dr. Lutz's medical opinion "some weight[:]"

As for opinion evidence, Fredrick Lutz, M.D., the State agency medical consultant, opined the claimant was capable to performing a range of sedentary work (Exhibits 9 A and 10A).  I accord this opinion ***some weight*** to the extent that it is consistent with the medical evidence of record and with the residual functional capacity stated herein.  Dr. Lutz is an expert in the evaluation of medical issues in disability claims under the Social Security Act and in evaluating the restrictions and limitations regarding the severity and persistence of the claimant's alleged symptoms pursuant to the guidelines in Sections 404. 1520 and 416.920 and SSR 16-3p.  However, the State agency consultant did not have the benefit of reviewing the other medical reports contained in the current record, which show the claimant is slightly more limited than originally determined.  As such, I have incorporated additional manipulative and environmental limitations into residual functional capacity assessment.  The record does not support greater limitations than those stated in finding five as the record reflects improvement with physical therapy (Exhibit 11F at 103).  Hospital records document normal strength, intact motor functioning, and no swelling (Exhibit 11F at 66).  The pain management specialist noted intact strength, sensory functioning, and range of motion (Exhibit 11F at 114).  Moreover, the most recent treatment records indicate the claimant remained neurologically intact (Exhibit 13F at 12 and Exhibit 14F at 4).

TR. 25–26 (emphasis added).  Because ALJ Wolfe reviewed the complete record and supported her decision to attribute some weight to Dr. Lutz's medical opinion with substantial evidence, there is no error in ALJ Wolfe's assessment.  See Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 831 (11th Cir. 2013) ("We may not reweight the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it.") (citing Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)); see also Besso v. Comm'r of Soc. Sec., No. 19-CV-276, 2020 WL 1271062, at *6–7 (M.D. Fla. 2020) ("[S]tate agency consultants are considered experts in Social Security disability evaluation . . . ." (citing 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i));  Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 807 (11th Cir. 2013) (stating that the ALJ does not give undue weight to a non-examining doctor when the ALJ does not unconditionally adopt the non-treating doctor's opinion and considers all the evidence to support the ALJ's conclusions).

d.   <u>"Jesse Faxas, Ph.D." ("Dr. Faxas")</u>

According to Claimant:

Dr. Faxas performed a psychological evaluation on Plaintiff in March of 2014. He diagnosed Plaintiff with Major depressive disorder, recurrent, severe with psychotic symptoms, F33.3 (ICD-10) (Active). The ALJ accorded Dr. Faxas['] evaluation and the fact that the Plaintiff is under his care no weight as consistent with his objective findings and treatment records from the Camillus Clinic.

***

[T]he ALJ improperly discounted the opinion of Dr. Faxas in favor of Dr. Knight. Dr. Faxas['] opinion and notes should have been given more weight as it is consistent with the record.

<u>See</u> Claimant's Motion for Summary Judgment [D.E. 14 at 5].

However, the record only reflects that Jesse Faxas ARNP ("Faxas ARNP") prescribed medications for Claimant on March 28, 2019 and that Claimant had a psychiatry appointment with Faxas ARNP at Camillus Health on June 26, 2019. TR. 8–9. Thus, there were no medical opinions in the record from Faxas ARNP for ALJ Wolfe to evaluate. <u>See</u> 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); <u>see also</u> <u>Romero</u>, 752 F. App'x at 908. Therefore, ALJ Wolfe did not commit reversible error with respect to "Dr. Faxas."

## II.    <u>Whether the ALJ committed reversible error by discrediting Claimant.</u>

Claimant contends that ALJ Wolfe "found [Claimant] only partially credible" and "stated that [Claimant's] statements concerning the intensity, persistence, and limiting effects [of his alleged symptoms] are not entirely credible[,]" and argues that ALJ Wolfe erred by "not provid[ing] specific, clear, and convincing reasons for rejecting . . . [C]laimant's subjective symptom testimony . . . ." <u>See</u> Claimant's Motion for Summary Judgment [D.E. 14 at 6–7].

When considering a claimant's symptoms, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could

reasonably be expected to produce the alleged symptoms." <u>Contreras-Zambrano v. Soc. Sec. Admin., Comm'r</u>, 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p, 82 Fed. Reg. 49,462, 49,463-64 (Oct. 25, 2017)). "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities." <u>Contreras-Zambrano</u>, 724 F. App'x at 703 (citing SSR 16-3p, 82 Fed. Reg. at 49,464-66). An ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [him]." 20 C.F.R. § 404.1529(c)(4). SSR 16-3p, effective October 25, 2017, clarified that "subjective symptom evaluation is not an examination of an individual's character." 82 Fed. Reg. at 49,463.

In her Unfavorable Decision, ALJ Wolfe stated, in pertinent part:

In his application, the claimant alleged disability due to back, neck, hand, and feet impairments. Specifically, he alleged herniated discs, nerve damage, degenerative disc disease, depression, cervical spurring, and numbness (Exhibit 3E at 2). At the hearing, the claimant testified that he is unable to work because of chronic neuropathy, a knee impairment causing a limping gait, and back pain. He explained that he has underwent multiple surgeries to address these issues. He claimed that he began using a cane two months prior to the hearing. He uses marijuana daily for his pain. He also alleged depression. He described anger problems causing difficulty interacting with others. Regarding functional limitations, the claimant maintained he can sit for an hour, stand for 30 minutes, walk half a block, and lift up to 20 pounds with his right upper extremity.

The claimant's longitudinal medical history is inconsistent with his allegations of disability. The record reflects the claimant's allegations of degenerative disc disease, neuropathy, and hypertension. However, the consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

***

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.   Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

TR. 23, 25.  ALJ Wolfe supported her finding by citing to record evidence indicating, *inter alia*: that Claimant's physical and neurological examinations were generally normal and unremarkable; that he demonstrated normal strength, intact motor functioning, and no swelling or tenderness; that there was no evidence of muscular weakness; that he ambulated without difficulty; that his range of motion was unimpaired; that he had no sensory deficits; that he demonstrated 5/5 strength in all extremities; that medication alleviated his pain; and that his condition improved with physical therapy.  Id. at 23–25.

Because ALJ Wolfe supported her findings regarding Claimant's allegations of the intensity, persistence, and limiting effects of his symptoms with substantial evidence, there is no error in the ALJ's assessment of Claimant's alleged pain and limitations.  See Strickland, 516 F. App'x at 831.

**III.**    **Whether the ALJ committed reversible error by failing to consider Claimant's mental impairments and obesity as medically determinable severe impairments.**

In support of this argument:

Plaintiff contends that the ALJ erred by failing to consider Plaintiff's mental impairments as medically determinable severe impairment[s].  However, the Court need not consider the issue.  Had the ALJ properly [given] controlling weight to Dr. Torres['] medical opinion and properly credited Dr. Faxas['] medical opinion and Plaintiff's symptom testimony, Plaintiff would have been found disabled within the meaning of the Social Security Act.

See Claimant's Motion for Summary Judgment [D.E. 14 at 7].

Notwithstanding the mention of "obesity" in the title of this argument, Claimant proffers no support for his claim of error in this regard.  Indeed, ALJ Wolfe included obesity in the list of Claimant's severe impairments.  TR. 21.

With regard to evaluating the severity of a claimant's mental impairments at step two, "the ALJ first evaluates the signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment (called the 'paragraph A criteria')[.]"  McMahon v. Comm'r, Soc. Sec. Admin., 583 F. App'x 886, 888 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520a(a)–(d)).  The ALJ then considers the functional limitations caused by the medically determinable mental impairments on the claimant's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself (called the "paragraph B criteria").  Dietz v. Comm'r of Soc. Sec., No. 19-CV-95, 2020 WL 929947, at *5 (M.D. Fla. 2020) (citing 20 C.F.R. § 404.1520a(c)(3)).  This method of evaluation is known as the Psychiatric Review Technique ("PRT").  Hines-Sharp v. Comm'r of Soc. Sec., 511 F. App'x 913, 915 (11th Cir. 2013).  If the ALJ finds that the degrees of functional limitations are "none" or "mild," the impairments will generally be found to be not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

"A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Mayer v. Comm'r of Soc. Sec., No. 15-CV-315, 2016 WL 3965111, at *4 (M.D. Fla. 2016) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)).  "A severe impairment is an impairment or combination of impairments that

23

significantly limits a claimant's physical or mental ability to do basic work activities." Mayer,

2016 WL 3965111, at *4 (citing 20 C.F.R. § 404.1520(c)).

At step two of her analysis, ALJ Wolfe utilized the PRT to assess Claimant's mental

impairments as follows:

> The record also reflects depression and substance abuse.  However, mental status
> examinations revealed normal findings.  The claimant remained fully oriented.  He
> displayed an appropriate appearance.  He was described as cooperative, friendly,
> pleasant, and engaged.  He maintained adequate eye contact.  He denied perceptual
> disturbances, such as hallucinations or delusions.   He demonstrated a logical,
> coherent, and goal-directed thought process.   His insight and judgment were
> deemed fair to good (Exhibit 14F at 97 and 103-104).  Further, the record indicates
> that activities of daily living were not difficult at all for claimant due to depressive
> symptoms (Exhibit 9F at 7).

> Given the foregoing, I find the claimant has the following degree of limitation in
> the broad areas of functioning set out in the disability regulations for evaluating
> mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart
> P, Appendix 1: mild limitation in understanding, remembering, or applying
> information, mild limitation in interacting with others, mild limitation in
> concentrating, persisting, or maintaining pace, and mild limitation in adapting or
> managing oneself. Nonetheless, to incorporate the claimant's testimony about
> anger outbursts, I have limited him to occupations that require no more than
> occasional interaction with others.

> As required by the regulations, I have considered the combined effects of the severe
> and non-severe impairments in assessing the claimant's functional capacity to work
> pursuant to 20 CFR 404.1523 and 416.923.

TR. 21–22.  Because ALJ Wolfe's designation of Claimant's mental impairments as non-severe

was supported by substantial evidence, the ALJ did not err in her assessment of Claimant's mental

impairments.  See Strickland, 516 F. App'x at 831.  Moreover, because ALJ Wolfe considered

Claimant's non-severe impairments when determining Claimant's RFC, any error in designating

Claimant's mental impairments as non-severe was harmless.  See Mayer, 2016 WL 3965111, at

*4–5 ("Thus, even assuming the ALJ erred when he concluded that

Plaintiff's mental impairments were non-severe, that error was harmless, because the ALJ

considered all of her impairments, including those she deemed non-severe, when determining Plaintiff's RFC.") (citing Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir.1984)); see also Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) (same).

## RECOMMENDATION

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that Claimant's Motion for Summary Judgment [D.E. 14] be **DENIED**, the Commissioner's Motion for Summary Judgment [D.E. 16] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 5th day of January, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies via CM/ECF to:
United States District Judge Darrin P. Gayles
Counsel of Record

Copies via U.S. mail to:
Erric S. Myricks
207 N.E. 62 Street, Apt. 47
Miami, FL 33138